UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

―――――――――――――――

№ 12-cv-3838 (JFB)(GRB)
―――――――――――――――

FEDHIA GAILLARD,

Plaintiff,

VERSUS

BAYER CORPORATION, AND
BAYER HEALTHCARE PHARMACEUTICALS, INC.,

Defendants.

―――――――――――――――

**MEMORANDUM AND ORDER**
December 13, 2013
―――――――――――――――

JOSEPH F. BIANCO, District Judge:

Plaintiff Fedhia Gaillard ("plaintiff") bring this personal injury action against defendants Bayer Corporation and Bayer Healthcare Pharmaceuticals, Inc. ("defendants" or "Bayer"), alleging that her exposure to Bayer's radiology contrast dye, Magnevist, caused her to develop a disease known as nephrogenic systemic fibrosis ("NSF"). Plaintiff has voluntarily dismissed several claims and, thus, the only remaining claims are for negligence, strict liability-design defect, and strict liability-failure to warn. Defendants move for judgment on the pleadings, arguing that the remaining personal injury causes of action are time-barred.

For the reasons set forth below, the Court agrees with defendants that the allegations in the Third Amended Complaint ("TAC") make clear that the claims are time-barred. In particular, Section 214-c(2) of the New York Civil Procedure Law and Rules establishes an exception to the general three-year statute of limitations, which allows the period to commence from the date of discovery of the injury in cases involving "personal injury . . . caused by the latent effects of exposure to any substance." C.P.L.R. § 214-c(2).

The TAC alleges that plaintiff began developing significant symptoms from her exposure to Magnevist in June 2005, including "a localized thickening and tightness of the fingers and toes," which spread over the next few months. (TAC ¶¶ 25-27.) Thus, because plaintiff discovered her injuries in June 2005, the filing of this lawsuit seven years later in August 2012 is well beyond the three-year statute of limitations period. Although plaintiff argues that the cause of her symptoms was not discovered until November 2009, it is well

settled under New York law that the three-year period runs from the date that plaintiff first noticed symptoms of the injuries, not when the cause was diagnosed.

Moreover, plaintiff has not alleged facts that would satisfy the other relevant exception to the general three-year limitations period, which is set forth in Section 214-c(4). As a threshold matter, plaintiff failed to plead, as required under Section 214-c(4), that medical knowledge sufficient to ascertain the cause of the injury had not been discovered before the expiration of the otherwise-applicable limitations period in June 2008. It is not surprising that no such allegation is made, given that a Multidistrict Litigation was formed in February 2008 (months before the limitations period ended in this case) consolidating dozens of cases alleging that Magnevist and other gadolinium-based contrast agents cause NSF.

Even if such an allegation were made, however, this exception could still not apply here because Section 214-c(4) also requires that the "discovery of the cause of the injury" be "alleged to have occurred less than five years after discovery of the injury." C.P.L.R. § 214-c(4). In other words, plaintiff needed to allege that she identified Magnevist as the cause of her NSF symptoms in or before June 2010, which was five years from the date NSF symptoms led her to seek medical assistance. Plaintiff makes no such allegation.

Finally, even assuming *arguendo* that plaintiff was granted leave to re-plead and add such an allegation, she still could not fall within the exception because she did not file within one year from the discovery of the cause—at the latest, one year from June 2010—and instead brought this lawsuit in August 2012. In an abundance of caution, at the oral argument, the Court gave plaintiff an opportunity to file a motion to re-plead to attempt to qualify for the Section 214-c(4) exception. However, plaintiff submitted a letter to the Court indicating that she did not wish the opportunity to file a motion to re-plead to attempt to address the statute of limitations issue. Accordingly, the motion to dismiss the remaining claims on statute of limitations grounds is granted.

I. BACKGROUND

A. Factual Background

The following facts are taken from the TAC, and they are not findings of fact by the Court. The Court assumes these facts to be true for the purpose of deciding this motion, and construes them in the light most favorable to plaintiff, the non-moving party.

Plaintiff has a history of renal disease, for which she has undergone several Magnetic Resonance Imaging (MRI) procedures. (TAC ¶¶ 19-23.) During these procedures, plaintiff was exposed to defendants' product Magnevist. (*Id*. at ¶ 5.) Magnevist is an injectable "gadolinium-based contrast agent" (*id*.) used during MRIs and angiography (*id*. at p.1).

Exposure to gadolinium is dangerous for renal-disease patients, like plaintiff, because they are less able to eliminate gadolinium from their bodies. (*Id*. ¶¶ 12-13.) As a result, products like Magnevist present a significant risk that renal disease patients might contract NSF. (*Id*. ¶ 12.) NSF[1] is characterized by discoloration, thickening, tightening, and swelling of the skin within weeks or months of exposure to gadolinium. (*Id*. ¶ 37.) The skin changes begin as dark patches that eventually take on a "woody"

---

[1] The TAC appears to use the terms NSF, nephrogenic fibrosing dermopathy, and fibrosing dermatitis interchangeably. (TAC ¶¶ 12, 31-32.) This opinion will use "NSF" only.

texture, and are often accompanied by burning, itching, and severe pain. (*Id.*) NSF may also cause significant internal damage, and could result in death. (*Id.*) There is no known cure. (*Id.*)

Plaintiff was exposed to Magnevist on multiple occasions between 2001 and 2008. (*Id.* ¶¶ 20-23.) At some point, she began seeking treatment for an "increasingly worsening medical condition," characterized by "hardening of her skin, joint stiffness, and corresponding limited range of motion." (*Id.* at ¶ 24.)

In June of 2005, a physician diagnosed plaintiff's skin condition "as being consistent with sclerodactyly, a localized thickening and tightness of the skin of the fingers or toes." (*Id.* ¶ 25.) The related condition of scleroderma was noted on plaintiff's hands that same month. (*Id.* ¶ 26.) Later in 2005, sclerodactyly was also found on plaintiff's legs. (*Id.* ¶¶ 27-28.) The condition persisted, but as late as October 2007, plaintiff's chronic pain, stiffness, and swelling were again diagnosed as scleroderma. (*Id.* ¶ 29.)

Many NSF patients are misdiagnosed multiple times before anyone discovers the disease. (*Id.* ¶ 16.) In plaintiff's case, NSF was raised as a possibility for the first time in September 2008, when her doctor recommended a biopsy. (*Id.* ¶ 30.) Plaintiff underwent that biopsy in August 2009, and in September 2009, her doctor suggested that she was suffering from NSF and encouraged her to seek a second opinion. (*Id.* ¶¶ 30-31.) Plaintiff did so, and the diagnosis was confirmed in November 2009, although plaintiff alleges that neither she nor her physicians understood the relationship between NSF and gadolinium at that time. (*Id.* ¶¶ 32-33.)

### B. Procedural History

Plaintiff filed this lawsuit on August 2, 2012. She has amended the complaint three times. Defendant moved for judgment on the pleadings, and alternatively to dismiss the TAC, on July 15, 2013. Plaintiff's opposition was filed on September 6, 2013, and defendants' reply was filed on September 16, 2013. The Court heard oral argument on this motion on November 26, 2013. At oral argument, the Court indicated that plaintiff had not sufficiently pled any exception to the three-year statute of limitations and that, based upon the pleadings, any attempt to amend would appear to be futile. However, in an abundance of caution, the Court gave plaintiff's counsel an opportunity to file a motion for leave to re-plead to attempt to overcome the statute of limitations problem. On December 2, 2013, plaintiff's counsel filed a letter advising the Court that plaintiff would not attempt to re-plead.

## II. STANDARD OF REVIEW

"To survive a rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is the same for motions under Rule 12(c) as it is for motions to dismiss under Rule 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (citation omitted).

In applying the plausibility standard, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). Though they are taken as true, the factual allegations must "raise a right to relief above the

3

speculative level." *Twombly,* 550 U.S. at 555.

The Supreme Court clarified the plausibility standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), setting forth two principles for deciding motions to dismiss. First, district courts must distinguish between the pleading of facts, which are entitled to the presumption of truth, and the pleading of legal conclusions, which are not. 556 U.S. at 678. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

III. DISCUSSION

The TAC contains both well-pleaded factual allegations and legal conclusions that are not entitled to a presumption of truth. The paragraph stating that "the discovery rule should be applied to toll…the statute of limitations until Plaintiff discovered…her actionable claim" is of the latter variety. (TAC ¶ 34.)

Accepting only plaintiff's factual allegations as true, the Court performs its own limitations analysis under New York law, which the parties agree applies in this diversity case. *See Giordano v. Market Am., Inc.*, 599 F.3d 87, 94 (2d Cir. 2010).

The general limitations period for personal-injury claims in New York is three years, but there are certain exceptions. C.P.L.R. § 214(5). Two exceptions involving exposure to hazardous substances are relevant here. C.P.L.R. § 214-c. Although plaintiff purports to rely solely on the first exception, she made arguments under both, so the Court will discuss each in turn. Plaintiff bears the burden of showing that these exceptions apply to her claim. *Giordano*, 599 F.3d at 95.

A. Latent Injury Exception and the Discovery Rule

The first exception to the general statute of limitations eliminates a quandary that often arose in harmful-substance cases, which tend to involve latent injuries: the limitations clock no longer starts at exposure to the harmful substance. *Blanco v. Am. Tel. & Tel. Co.*, 90 N.Y.2d 757, 766 (N.Y. 1997). Instead, the discovery rule starts the limitations period on "the date of discovery of the injury by the plaintiff." C.P.L.R. § 214-c(2).[2]

The New York Court of Appeals has clarified that the rule refers to "discovery of the physical condition and not…the more complex concept of discovery of both the condition and the nonorganic etiology of that condition."[3] *Wetherill v. Eli Lilly & Co.*,

---

[2] Under this section, the limitations period may also begin to run on "the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff," if that date is earlier than the plaintiff's *actual* discovery of the injury. However, defendants are not relying on the "reasonable diligence" trigger date; instead, they rely on the allegations in the complaint that demonstrate actual discovery of the injury in June 2005. Therefore, there is no reasonable diligence issue in this case.

[3] The use of the word "condition" by the Court of Appeals may cause some confusion about whether discovery requires anything beyond knowledge of physical symptoms or injuries. But it is clear from the opinion itself, and subsequent interpretations of it, that "condition" is synonymous with "symptoms" and "injury," the latter of which is used in the text of § 214-c(2). *See Wetherill*, 89 N.Y.2d at 514 ("It is apparent . . . that, in enacting a new 'discovery' rule for the commencement of toxic torts, the Legislature had in mind only the discovery of the manifestations

4

(*In re N.Y. Cnty.*), 89 N.Y.2d 506, 514 (1997). In other words, "[t]he three year limitations period runs from the date when plaintiff first noticed symptoms, rather than when a physician first diagnosed those symptoms." *Galletta v. Stryker Corp.*, 283 F. Supp. 2d 914, 917 (S.D.N.Y. 2003).

A straightforward application of Section 214-c(2) in this case, based upon the allegations in the TAC, starts the limitations clock in 2005. In June of that year, plaintiff and her doctor saw symptoms, namely "a localized thickening and tightness of the skin of the fingers or toes" (TAC ¶ 25), which spread over the next few months (*Id.* ¶ 27). Regardless of which date during those months serves as the start of the limitations period, the current action would be time-barred because plaintiff did not file it until August of 2012.

Plaintiff argues that this suit was nonetheless timely in August 2012 because the true date of discovery was November 29, 2009, when she received the second opinion confirming that she had NSF. To be sure, the TAC describes how NSF was not diagnosed right away, and how plaintiff received incorrect diagnoses before her condition became worse. (TAC ¶¶ 24-30.) However, as noted above, plaintiff's argument is completely inconsistent with the explicit holding of the New York Court of Appeals in *Wetherill*, as well as numerous other New York State decisions making clear that the date of discovery of the symptoms, rather than the diagnosis of the cause of the symptoms, is the trigger for Section 214-c. *See, e.g.*, *Whitney v. Quaker Chem. Corp.*, 90 N.Y.2d 845, 847 (1997) ("Neither plaintiff's contention that his symptoms worsened or changed in 1991 nor the diagnosis of a doctor he first visited in September 1991 that substances other than the coolant caused his injury makes his claim timely. All that is necessary to start the limitations period is that plaintiff be aware of the primary condition for which damages are sought."); *Barlow v. Sun Chem. Co.*, 838 N.Y.S.2d 387, 399 (N.Y. Sup. Ct. 2007) ("[I]t is not when decedent learned that his AML was caused by exposure to the defendants' products that is the controlling date, or even when the disease was diagnosed, but rather when he experienced the symptoms of that disease that is determinative for statute of limitations purposes."); *Martin v. 159 W. 80 Street Corp.*, 770 N.Y.S.2d 720, 722 (N.Y. App. Div. 2004) (noting that the discovery rule relates to "the time [plaintiff] realizes that she has the physical manifestations of illness, regardless of when she learns the cause"); *Harley v. E. 83rd Owners Corp.*, 655 N.Y.S.2d 507, 509 (N.Y. App. Div. 1997) (finding claims time-barred where plaintiff received a wide range of incorrect diagnoses before discovery that mold was the cause); *see also Galletta*, 283 F. Supp. 2d at 917 ("[T]he significant date is when plaintiff began experiencing symptoms, not when [the doctor] diagnosed them."); *Ferreri v. McGhan Med. Corp.*, No. 95-CV-6189, 1997 WL 580714, *3 (S.D.N.Y. Sept. 17, 1997) ("[N]either erroneous diagnoses [n]or progressive deterioration of a patient's condition tolls the statute of limitations.") (citations omitted).

Thus, a non-diagnosis or misdiagnosis of the symptoms, as plaintiffs allege here, does not alter the rule that the claims began to run

---

or symptoms of the latent disease that the harmful substance produced."); *see also Neri v. R.J. Reynolds Tobacco Co.*, 185 F. Supp. 2d 176, 180 (N.D.N.Y. 2001) ("What is at issue is whether these symptoms were significant enough to put John Jr. on notice of the injury that forms the basis of his claims."); *Cochrane v. A C & S, Inc.*, No. 92 CIV. 8841, 1998 WL 642719, at *3 (S.D.N.Y. Sept. 18, 1998) ("Once recognizable symptoms of a condition are sufficiently present, the limitations period begins to run.").

under Section 214-c(2) at the time plaintiff noticed her symptoms in 2005. As one court noted, "[t]he purpose of § 214-c(2) would be subverted if one could wait to file suit until receiving an official diagnosis." *Morgan v. Abco Dealers, Inc.*, No. 01-CV-9564, 2007 WL 4358392, at *5 (S.D.N.Y. Dec. 11, 2007).

Given the clear allegations in the TAC that plaintiff discovered her injuries in June 2005 (and thereby triggered the three-year limitation period of Section 214-c(2)), plaintiff seeks refuge in the following footnote to the *Wetherill* opinion:

> We recognize that there may be situations in which the claimant may experience early symptoms that are too isolated or inconsequential to trigger the running of the Statute of Limitations under CPLR 214–c(2). We need not decide in this case, however, precisely where the threshold lies. . . .

89 N.Y.2d at 514 n.4.

However, that exception to the general rule of Section 214-c(2) regarding the discovery of injuries cannot have any applicability here given the allegations in the TAC. The theory behind this potential exception, as articulated by the Court of Appeals, is that some early symptoms could be so isolated or inconsequential, either in terms of frequency or seriousness, that they would not put a plaintiff on notice of the underlying injury or disease. *See, e.g.*, *Grill v. Philip Morris USA, Inc.*, 653 F. Supp. 2d 481, 486-87 (S.D.N.Y. 2009) (finding isolated or inconsequential a lesion unaccompanied by other symptoms).

Based upon the detailed allegations in the TAC, this is not a case where the early symptoms were isolated or inconsequential. The TAC alleges that plaintiff began seeking medical attention for her "increasingly worsening" skin condition as long ago as 2005. (TAC ¶¶ 24-25.) More specifically, it alleges that the serious symptoms were noticed by physicians in June 2005, diagnosed as being consistent with sclerodactyly, and became increasingly worse over several months in 2005. For example, the TAC contains the following allegations: (1) "[o]n June 11, 2005, while a patient at Mount Sinai Medical Center in New York, New York, Plaintiff's physician clinically assessed Plaintiff's condition as being consistent with sclerodactyly, a localized thickening and tightness of the skin of the fingers or toes sometimes associated with scleroderma" (*Id.* ¶ 25); (2) "[o]n June 20, 2005, Plaintiff's physician at Mount Sinai Medical Center noted evidence of scleroderma in Plaintiff's hands" (*Id.* ¶ 26); (3) "[o]ver the course of the next several months, the skin of Plaintiff's lower extremities also began to thicken and harden" (*Id.* ¶ 27); (4) "[i]n December of 2005, Plaintiff's physician with North Shore-Long Island Jewish University Hospital…also assessed Plaintiff's condition as being consistent with sclerodema" (*Id.*).

These allegations belie any possible contention that the symptoms were "isolated or inconsequential," such that the "discovery" under Section 214-c(2) did not occur in 2005. *See, e.g.*, *Whitney*, 90 N.Y.2d at 847 (considering multiple hospital visits to be indicative of plaintiff's discovery of the injury); *Scheidel v. A.C. & S. Inc.*, 685 N.Y.S.2d 829, 831 (N.Y. App. Div. 1999) (concluding, where symptoms of shortness of breath and difficulty walking any distance began back in 1990, that "[t]his was not a situation in which decedent's symptoms were so isolated or inconsequential that a reasonably diligent person would not

attribute them to an injury or disease"); *Braunscheidel v. Stryker Corp.*, No. 3:12-CV-1004, 2013 WL 1337013, at *5 (N.D.N.Y. Mar. 29, 2013) (finding that doctors' visits demonstrated the "symptoms were not the sort of 'isolated or inconsequential' symptoms referred to in *Wetherill*").

At oral argument, plaintiff's counsel acknowledged that the serious symptoms in 2005 were not inconsequential.[4] However, counsel then suggested that the symptoms might still be considered isolated. That conclusory assertion is contradicted by the above-referenced allegations in the TAC which make clear that the symptoms were not isolated in duration (because they were continuous) or scope (because it covered her hands and then lower extremities). Serious symptoms such as these, which were also sufficient to require medical attention and an attempted diagnosis, are significant enough to trigger the statute of limitations period under New York law. As alleged, plaintiff knew from her symptoms that she had a disease or injury in 2005, even if she did not know the cause. Thus, the footnote in *Wetherill* has no plausible applicability to this case.[5] *See Iqbal*, 556 U.S. at 678 (noting that a court's ability to draw inferences depends on a plaintiff's pleading of "factual content").

In sum, the allegations of the TAC demonstrate that plaintiff did not file this lawsuit within three years of discovering her injuries in June 2005, as required by C.P.L.R. § 214-c(2).

B. Unknown Cause Exception

Section 214-c contains a second relevant exception to the three-year statute of limitations, which addresses situations

---

[4] Plaintiff's counsel stated at oral argument: "I am not alleging that they [*i.e.*, the symptoms] are inconsequential; she certainly was treating; she was certainly active in trying to figure out what was going wrong, why was her skin abnormal."

[5] Without expressly saying so, plaintiff's suggestion that there is a factual dispute about whether NSF was isolated or inconsequential before 2009 appears to be a form of "second injury" argument. In a footnote in her opposition papers, although acknowledging it is not specifically alleged in the complaint, plaintiff suggests that the primary cause of her skin's deterioration might be a separate drug she took for end-stage renal disease, which involved "numerous medications and therapies, any one of which *could* have been responsible for swollen, tight, or still extremities and digits." (Pl. Br. at 6 n.3) (emphasis added). Under New York's second-injury rule, "diseases that share a common cause may nonetheless be held separate and distinct where their biological manifestations are different and where the presence of one is not necessarily a predicate for the other's development." *Braune v. Abbott Laboratories*, 895 F. Supp. 530, 555–56 (E.D.N.Y. 1995). Plaintiff's implicit second-injury argument fails, however, because the TAC does not allege any "separate and distinct" condition with different "biological manifestations" before 2009. In fact, throughout the TAC, the "condition" is referred to in the singular, and described generally as an "increasingly worsening medical condition" that afflicted her "[f]rom the time of her last exposure to gadolinium-based agents and continuing thereafter until on or around August 3, 2009." (TAC ¶ 24.) The TAC also alleges that gadolinium may cause NSF "within weeks or months" of exposure to a product like Magnevist. (*Id.* ¶ 37.) Plaintiff was exposed to Magnevist as early as July of 2001, and the TAC describes at least ten other instances of Magnevist exposure between 2001 and 2008. (*Id.* ¶¶ 20-23.) The TAC posits no other cause or separate injury during this period. *See Barlett v. Moore Bus. Forms., Inc.*, No. 96–CV–1632, 2000 WL 362022, at *6 (N.D.N.Y. Mar. 30, 2000) ("The progression of a single disease or condition into a more serious or debilitating form does not…give rise to an actionable second injury."). At oral argument, counsel acknowledged that, with hindsight and additional scientific evidence, plaintiff now asserts that the cause of the symptoms in 2005 was NSF. In short, the TAC does not identify any separate non-NSF condition before 2009 that was the cause of the continuous symptoms that began in 2005. Thus, the allegations of the TAC cannot possibly give rise to any "second injury" argument, even if one were explicitly asserted in plaintiff's papers.

where injuries are novel or hard to detect, and their causes are at first unknown:

> [W]here the discovery of the cause of the injury is alleged to have occurred less than five years after discovery of the injury . . . an action may be commenced or a claim filed within one year of such discovery of the cause of the injury; provided, however, if any such action is commenced or claim filed after… [the three-year limitations period]… *the plaintiff or claimant shall be required to allege and prove* that technical, scientific or medical knowledge and information sufficient to ascertain the cause of his injury had not been discovered, identified or determined prior to the expiration of the period within [the three-year limitations period].

C.P.L.R. § 214-c(4) (emphasis added).

This exception's specific pleading requirement is not a subjective standard: the Court of Appeals has held that plaintiffs must allege and prove not that they themselves, or even their own doctors, were unaware of the injury's cause, but that "the relevant technical, scientific or medical community" must have generally accepted the causal relationship between the condition and the harmful substance within the limitations period. *Giordano v. Market Am., Inc.*, 15 N.Y.3d 590, 594 (2010).

Plaintiff has made no such allegation here. Instead, the complaint alleges only that her own doctors remained uncertain of the cause of her skin condition, but states nothing about when the causal relationship was generally accepted in the medical community, such that an expert could have testified about it in New York courts. *Id*. at 601-02. Absent this specific allegation, plaintiff cannot avail herself of C.P.L.R. § 214-c(4). To the extent plaintiff attempts to satisfy this requirement by alleging that her own healthcare providers remained uncertain as to the cause, such an allegation is insufficient to satisfy this requirement. As the New York Court of Appeals made clear in *Wetherill*, the statute of limitations rules do not "depend on such fortuitous circumstances as the medical sophistication of the individual plaintiff and the diagnostic acuity of his or her chosen physician." 89 N.Y.2d at 515. Instead, "only the technical knowledge of the scientific and medical communities [should] be considered in determining whether the injured's delay following the discovery of injury should be excused." *Id*.

As to whether plaintiff could correct this defect in the pleading if given leave to re-plead, defendants note that "Plaintiff cannot credibly argue by June 2008 the medical and scientific communities were in the dark as to any 'probable causal relationship' between Magnevist and NSF when a multidistrict litigation formed in February 2008 consolidated dozens of cases alleging just such a causal relationship."[6] (Def. Reply Mem. at 9.)

In any event, even assuming *arguendo* that plaintiff could cure the above-referenced pleading defect, plaintiff still cannot fall within the exception under Section 214-c(4) for an independent reason. The statute provides that any extension of

---

[6] Although the Court's decision is not contingent upon the MDL formed in February 2008, the Court "is permitted to take judicial notice of matters of public record including the fact of such litigation and related filings." *5-Star Mgmt., Inc. v. Rogers*, 940 F. Supp. 512, 518 (E.D.N.Y. 1996). At oral argument, plaintiff's counsel stated that he had no objection to the Court taking judicial notice of the MDL for purposes of the motion.

8

the limitations period requires that "the discovery of the cause of injury" be "alleged to have occurred less than five years after discovery of the injury." C.P.L.R. § 214-c(4). Therefore, in the instant case, plaintiff would need to allege that she identified Magnevist as the cause of her NSF symptoms on or before June 2010, which is five years from the date that her NSF symptoms prompted her to seek medical assistance in June 2005. Plaintiff fails to make any such allegation in the TAC. To the extent plaintiff again attempts to argue that she was not aware of the cause of her symptoms, knowledge of the cause is irrelevant to this requirement. *See Freier v. Westinghouse Elec. Corp.*, 303 F.3d 176, 184 (2d Cir. 2002) ("[Section] 214-c(4) gives the plaintiff five years after the discovery (actual or constructive) of the injury to ascertain its cause. If he does not (or cannot) discover the etiology within five years, then he is barred by the statute of limitations.") (internal citation and quotation marks omitted).

Finally, even if that defect could be overcome, plaintiff still could not qualify for the exception. In particular, even if plaintiff alleged that she identified Magnevist as the cause of her symptoms by June 2010, she was required to file her lawsuit within one year of "such discovery of the cause." C.P.L.R. § 214-c(4). Plaintiff did not do that here. Instead, she filed suit in August 2012, after more than two years had passed.

In sum, based upon a review of the TAC, it is clear that plaintiff cannot qualify for any extension of the three-year limitations period under Section 214-c(4).[7]

---

[7] Although the TAC raises the issue of equitable estoppel (TAC ¶ 35), plaintiff did not make that argument in her opposition papers. In any event, even assuming the issue was raised in the opposition, there are no alleged grounds for equitable estoppel in this case. "To invoke equitable estoppel, the plaintiff has 'to establish that … specific actions by [the] defendant [ ] somehow kept [him or her] from timely bringing suit.'" *Robare v. Fortune Brands, Inc.*, 833 N.Y.S.2d 753, 755 (N.Y. App. Div. 2007) (internal citation and quotation marks omitted). As discussed above, in 2008, toward the end of the limitations period in this case, the relationship between gadolinium and NSF was no secret—enough plaintiffs had sued these same defendants that their cases were consolidated in a multidistrict litigation. *See In re: Gadolinium Contrast Dyes Prods. Liab. Litig.*, 536 F. Supp. 2d 1380 (J.P.M.L. 2008). Moreover, by the time of the filing of the multidistrict litigation in February 2008, plaintiff's symptoms had existed for three years. In addition, the TAC alleges that "[o]n September 4, 2008, while a patient at Stony Brook Dermatology, Plaintiff's healthcare provider questioned whether Plaintiff's condition was consistent with NSF or systemic sclerosis, and thus recommended Plaintiff undergo a biopsy of her skin." (TAC ¶ 30.) Notwithstanding her many years of symptoms dating back to 2005, the formation of the MDL in February 2008, and her healthcare provider's statement in September 2008, plaintiff still did not file the lawsuit until August 2012, which is more than four years after the MDL. Under such circumstances, regardless of any alleged acts of concealment by the defendants, plaintiff has failed to provide a basis for equitable tolling because she failed to act with due diligence in filing within the applicable statute of limitations based upon the information available to her. Accordingly, even if plaintiff had sought to invoke that doctrine in her opposition, the Court would find it to be without merit. *See Putter v. N. Shore Univ. Hosp.*, 7 N.Y.3d 548, 553 (2006) ("Although the question of whether a defendant should be equitably estopped is generally a question of fact, here, given [plaintiff's] level of awareness and subsequent inaction, equitable estoppel is inappropriate as a matter of law.").

---

## IV. CONCLUSION

For reasons set forth herein, plaintiff's personal injury claims—namely, Counts 1, 2, and 3—are time-barred. Accordingly, the motion for judgment on the pleadings, brought under Rule 12(c) of the Federal Rules of Civil Procedure, is granted, and plaintiff's personal injury claims are dismissed.[8] As noted *supra*, in her response

---

[8] At oral argument, although the Court was skeptical as to whether plaintiff could re-plead allegations to satisfy the requirements of Section 214-c(4), the

papers on this motion, and through counsel at oral argument, plaintiff voluntarily dismissed the other causes of action.

The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 13, 2013
       Central Islip, NY

\*\*\*

Plaintiff is represented by David S. Ratner and David T. Sirotkin of Morelli Alters Ratner P.C., 950 Third Avenue, 11th Floor, New York, NY 10022; and by Nathan VanDerVeer, Freese & Goss, P.L.L.C., 1901 Sixth Avenue North, Suite 3120, Birmingham, AL 35203. Defendants are represented by Christopher D. Thomas of Nixon Peabody LLP, 1300 Clinton Square, P.O. Box 31051, Rochester, NY 14603; and by Tarek Ismail and Jennifer Greenblatt, Goldman Ismail Tomaselli Brennan & Baum LLP, 564 West Randolph Street, Suite 400, Chicago, IL 60661.

---

Court stated that it would give plaintiff an opportunity to make a motion to re-plead if plaintiff believed that she could do so. By letter dated December 2, 2013, plaintiff's counsel advised the Court that plaintiff did not intend to file an amended complaint.